STATE OF MONTANA, Plaintiff and Respondent, *v.* LAVERN E. BORCHERT, Defendant and Appellant.

No. 11833.
Decided Jan. 6, 1970.
479 P.2d 454.

Berg, O'Connell, Angel & Andriolo, Bozeman, Richard J. Andriolo (argued), Bozeman, for appellant.

Robert L. Woodahl, Atty. Gen., Helena, Patrick J. Brophy, Asst. Atty. Gen., (argued), Helena, McKinley Anderson, County Atty., Bozeman, Gene I. Brown, Deputy Atty. Gen., (argued), Bozeman, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

Defendant was tried by a jury in the district court of the eighteenth judicial district, Gallatin county, and convicted of the offense of committing a lewd and lascivious act upon a child. He was sentenced to twenty years in the Montana state prison.

On July 31, 1969 at approximately 1:00 p.m. the victim, a five-year-old girl, and her two girl friends, ages nine and ten, were forced into a car and taken to the outskirts of Bozeman, Montana where the victim was sexually molested. The girls were then taken back to Bozeman at approximately 2:00 p.m. The girls told the mother of the victim what had happened and the police were summoned. A description of the assailant and his car was given by the girls. The police located the car and the assailant, pursuant to the description, and brought him to the police station. In the meantime the victim was examined by a physician and then she and her companions were brought to the police station. At approximately 4:00 p.m. the same day the girls and other witnesses were allowed to view the defendant through a one-way mirror. They identified defendant as the man who was at the place where the victim and her companions were picked up; also as the man who took the girls in his car and sexually molested the victim. The defendant was sitting in a police interrogation room with two uniformed policeman at the time of the viewing. He matched the description given by the girls except for the fact that he had shaved and changed clothes. Pursuant to the identification, defendant was charged with committing a lewd and

lascivious act upon a minor child. The wife of the defendant, at the time of the viewing, told the police she had not seen her husband at home at the time of the alleged molestation. At the trial she testified he was at home during that time.

On appeal defendant's first contention is that the trial court should not have permitted courtroom identification of the defendant by the witnesses who participated in the viewing, because the identification was a product of a pretrial lineup (1) in the absence of counsel; and (2) the lineup was unnecessarily suggestive and conducive to irreparable mistaken identification. Also it is urged that under the totality of circumstances the defendant was convicted without due process of law.

Police lineup out-of-court identification of an accused, subsequent to indictment, has been held to be a "critical" stage at which the accused has a constitutional right to assistance of counsel. This was held as to a post-indictment federal prosecution in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and to a state court post-indictment pretrial lineup in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The Wade and Gilbert test applies only to post-indictment lineups. Such interpretation is based on an inference drawn from the language of the later case of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247, 1252:

"* * * The rationale of those cases was that an accused is entitled to counsel at any 'critical stage of the prosecution,' and that a post-indictment lineup is such a 'critical stage'. * * *"

The Supreme Court of Illinois in People v. Palmer, 41 Ill.2d 571, 244 N.E.2d 173, has adopted the view that *Wade* and *Gilbert* apply only to post-indictment lineups. We are not prepared at this time to apply *Wade* and *Gilbert* to pre-indictment or pre-information situations, rather, we think controll-

ing is the application of the Fourteenth Amendment of the United States Constitution in Stovall v. Denno, 388 U.S. 293, 87 S.Ct.1967, 18 L.Ed.2d 1199.

There the court found from the totality of the circumstances surrounding the identification, that Stovall had been extended due process of law in a constitutionally fair trial.

The lineup here was immediately following the defendant's arrest and prior to his being charged and the appointment of counsel and the decisions of *Wade* and *Gilbert* are not binding, even though the pretrial lineup occurred after the date of those decisions.

There remains for consideration the question of whether the pretrial identification was so unnecessarily suggestive and conducive to mistaken identification that the defendant was denied due process of law. Stovall v. Denno, supra.

Despite the fact that a lineup under some circumstances may be unnecessarily suggestive and conducive to irreparable mistaken identification, the court in *Stovall* said:

"However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *" 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199.

Therefore, the remaining question is whether under the "totality of the circumstances," defendant was convicted without due process of law. There have been cases where the pretrial identification was suggestive of the accused guilt, yet there was not found to be any denial of due process. Examples of these permissible confrontations are where the witness and the accused face each other shortly after the commission of the crime at or near the scene of the crime; or where the accused is identified in court on a basis independent of the tainted confrontation. In the latter instance the independent identification is usually the observation of the witness during the commission of the offense.

*Wade* sets out guidelines for determining whether an in-court identification is independent of an improper lineup identification:

"\* \* \* the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149.

Applying the guidelines to the present case we conclude that the in-court identification was based on facts independent of the improper identification. The eyewitnesses had spent approximately one hour with the assailant in the automobile during daylight hours, furnishing ample "opportunity to observe the alleged criminal act." Although the testimony shows a discrepancy between the pre-lineup description and the defendant's actual description, it was brought out that the witness recognized the fact the defendant had shaved and was wearing different apparel at the time of the identification. Finally, and most conclusively, the lapse of time between the alleged act and the identification was only two hours.

As to the photographs shown to two of the witnesses shortly before trial, under some circumstances it could be suggestive and conducive to misidentification. But we fail to view it violative of due process in light of the sufficient independent basis for the in-court identification set out above.

The record contains material facts to support the conviction, other than the identification by the young witnesses. They are:

1. The automobile positively identified by various sources as the one used in the crime was a blue 1964 Studebaker station wagon which is unique in appearance, no longer manufactured,

and nearly extinct. Defendant owns a blue 1964 Studebaker station wagon matching this description.

2. The automobile in which the girls were picked up needed to be pushed to be started. Apparently it could be pushed and started by one man, and it did not need to be pushed each time it was started. Defendant's automobile had a chip in the flywheel and needed to be rocked to be started. This could be done by one man and was not necessary each time it was started.

3. The automobile used in the commission of the crime bore Idaho license plates. Defendant's automobile bore Idaho license plates.

4. The children testified to seeing a picture of a semiclad lady in the car in which they were abducted. Defendant's automobile had in it, on the date of the crime, an air-freshener with a picture of a pin-up girl.

5. The defendant's wife and other witnesses testified that the defendant was home at the time the alleged crime was perpetrated. An officer testified the defendant's wife said on the day of the crime that defendant was not at home at the time the alleged crime was perpetrated.

These facts taken together show the defendant's complicity in the crime.

Defendant's second specification of error is that certain jurors should have been disqualified upon challenge for cause. There is no transcript of the objectionable portion of the voir dire transmitted to this Court, only an affidavit of the defendant's attorney. In this matter we wish to affirm our holding in Watson v. City of Bozeman, 117 Mont. 5, 156 P.2d 178, that the trial court is in a better position to judge the prejudice of jurors and its findings should not be set aside unless the "error is manifest, or there is shown a clear abuse of discretion." Here, no such error or abuse of discretion has been shown.

Defendant further alleges that the admission of State's

exhibit #1, a photograph of the interior of defendant's car, was error. The portion of the automobile portrayed could have been observed through the windows of the automobile without entry. Defendant urges that since the automobile must have been entered in order for the photograph to have been taken, there was an "illegal" search and the use of the photograph at trial should have been suppressed. Without deciding whether there was an illegal search, we hold the admission of the photograph, even if illegal, was harmless error within the ruling of Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); that is, that the use of tainted evidence is harmless error when there is introduced "overwhelming" untainted evidence bearing on all elements of the offense charged. Further, it must be admitted that the introduction of State's exhibit #1 was harmless error in that the defendant as well as defendant's witnesses testified to facts identical to what was portrayed by the exhibit.

Finally, defendant urges that the trial court erred in refusing to give defendant's proposed instruction admonishing the jury on how easy it is to charge an individual with a crime of this nature, and how difficult it is to disprove the charge once it is made. This Court upheld the refusal to give such an instruction in State v. Stevens, 119 Mont. 169, 172 P.2d 299, and in State v. Peterson, 102 Mont. 495, 59 P.2d 61. We hold that the failure to give such an instruction here was not error in the instant case.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON and DALY, concur.